888 A.2d 664

**Charles F. McCREESH, Appellant**

**v.**

**CITY OF PHILADELPHIA, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2004.

Decided Dec. 28, 2005.

Gerald B. Baldino, Media, for Charles F. McCreesh.

George Gerasimos Rassias, Media, for PA Trial Lawyers Association, amicus curiae.

Alan C. Ostrow, Philadelphia, for City of Philadelphia.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, BAER, JJ.

## *OPINION*

Justice BAER.

We granted review in this case to clarify what constitutes a good faith effort by a plaintiff to effectuate notice to a defendant of the commencement of an action. In the seminal case of *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), this Court sought to end abuses of process by plaintiffs who tolled the statute of limitations by filing a writ of summons, had the writ repeatedly reissued, and deliberately failed to notify the defendant of the pending litigation. This process, while technically compliant with the Rules of Civil Procedure, nonetheless defeated the purpose of the statute of limitations, which is to protect defendants from stale claims. Accordingly in *Lamp*, we held that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.* at 889.

We revisited the *Lamp* rule in *Farinacci v. Beaver County Industrial Development Authority*, 510 Pa. 589, 511 A.2d 757, 759 (1986), wherein we stated that "*Lamp* requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action." Most recently, we reconsidered the necessary

requirements of a "good faith effort to effectuate notice" in our plurality opinion in *Witherspoon v. City of Philadelphia*, 564 Pa. 388, 768 A.2d 1079 (2001), wherein the opinion announcing the judgment of the court favored requiring plaintiffs to have process immediately and continually reissued if it could not be served timely.

█ The Superior and Commonwealth Courts have struggled to apply the *Lamp–Farinacci* rule, with some panels requiring plaintiffs to comply strictly with the Rules of Civil Procedure related to service of process and local practice in order to satisfy the good faith requirement, *see, e.g., Teamann v. Zafris*, 811 A.2d 52, 63 (Pa.Cmwlth.2002), and other panels providing a more flexible approach, excusing plaintiffs' initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced, *see, e.g., Leidich v. Franklin*, 394 Pa.Super. 302, 575 A.2d 914 (1990).[1] We now adopt the more flexible approach, concluding that it sufficiently protects defendants from defending against stale claims without the draconian action of dismissing claims based on technical failings that do not prejudice the defendant.

In this case, Charles F. McCreesh (Appellant) claims that he was seriously injured on August 14, 2000, when a tree, growing on property owned by the City of Philadelphia ("the City"), fell on his truck while he was traveling on Walnut Street. Appellant commenced the present litigation against the City by filing a Praecipe to Issue a Writ of Summons

---

**1.** We observe that in every case applying *Lamp*, including the case *sub judice*, the plaintiff eventually complied with the Rules of Civil Procedure and formally served the defendant with process. Indeed, without this eventual service jurisdiction could never attach, and any particular case would never be litigated through the courts. *See Sharp v. Valley Forge Med. Center & Heart Hosp., Inc.*, 422 Pa. 124, 221 A.2d 185, 187 (1966) ("The rules relating to service of process must be strictly followed, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made"). The question in these cases is whether a plaintiff's claim will be dismissed because the plaintiff's initial attempts at service do not technically comply with the rules. We do not address the situation where a plaintiff never complies with the Rules of Civil Procedure relating to service.

("Writ 1") on August 12, 2002, pursuant to Pa.R.C.P. 1007,[2] within the applicable two-year statute of limitations.[3] Appellant attempted to serve the City with Writ 1, by sending it to the City Law Department by certified mail. The parties agree that a United States Postal Service employee delivered the package containing Writ 1, and that a receptionist at the Law Department signed for the package on August 13, 2002.

There is no indication of any correspondence between Appellant and the City between August 13, 2002, and November 8, 2002, when Appellant filed his complaint alleging negligence and requesting damages not to exceed $50,000. Also on November 8, 2002, Appellant requested the writ's reissuance ("Writ 2") in accordance with Pa.R.C.P. 401(b),[4] and served

2. Pa.R.C.P.1007 provides, "An action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint."

3. *See* 42 Pa.C.S. § 5524(2).

4. Rule 401. Time for Service. Reissuance, Reinstatement and Substitution of Original Process. Copies for Service

(a) Original process shall be served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint.

  \*  \*  \*  \*  \*  \*

(b)(1) If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule ..., the prothonotary upon praecipe and upon presentation of the original process, shall continue its validity by reissuing the writ or reinstating the complaint, by writing thereon "reissued" in the case of a writ or "reinstated" in the case of a complaint.

(2) A writ may be reissued or a complaint reinstated at any time and any number of times. A new party defendant may be named in a reissued writ or a reinstated complaint.

(3) A substituted writ may be issued or a substituted complaint filed upon praecipe stating that the former writ or complaint has been lost or destroyed.

(4) A reissued, reinstated or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule ... after reissuance, reinstatement or substitution.

(5) If an action is commenced by writ of summons and a complaint is thereafter filed, the plaintiff instead of reissuing the writ may treat the complaint as alternative original process and as the equivalent for all purposes of a reissued writ, reissued as of the date of the filing of the complaint. Thereafter the writ may be reissued, or the complaint may be reinstated as the equivalent of a reissuance of the writ, and the plaintiff may use either the reissued writ or the reinstated complaint as alternative original process.

the City Law Department properly by hand delivery by a competent adult, as specified in Pa.R.C.P. 400.1[5] and 402.[6] The City filed preliminary objections on November 25, 2002, asserting that delivery of Writ 1 by certified mail in August 2002 did not comply with Pa.R.C.P. 400.1, which requires original process in actions commenced in Philadelphia to be served by either the sheriff or a competent adult, and that the complaint filed in November had not been filed within the two-year statute of limitations period. The City posited that the complaint was untimely, Writ 1 was rendered ineffective because of Appellant's failure to serve properly, and Appellant's claims were therefore time-barred.[7] Appellant maintained that Writ 1 had been served in compliance with the rules, arguing that the delivery of the writ by the postal worker constituted service by a competent adult.

> *Note:* If the applicable time has passed after the issuance of the writ or the filing of the complaint, the writ must be reissued or the complaint reinstated to be effective as process. Filing or reinstatement or substitution of a complaint which is used as alternative process under this subdivision, has been held effective in tolling the statute of limitations as the reissuance or substitution of a writ. Pa.R.C.P. 401.

**5.** Rule 400.1. Provisions for all Courts of the First Judicial District

> (a) In an action commenced in the First Judicial District, original process may be served
> (1) within the county by the sheriff or a competent adult

Pa.R.C.P. 400.1(a). The First Judicial District is comprised of Philadelphia County. *See* Pa.R.C.P. 400.1(a) (note). Moreover, the Rules define a competent adult as "an individual eighteen years of age or older who is neither a party to the action nor an employee or relative of a party." Pa.R.C.P. 76.

**6.** Pa.R.A.P. 402(a)(2)(iii) provides, "Original service may be served ... by handing a copy ... at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof." Similarly, Pa.R.C.P. 422(b)(1), in relevant part, requires, "Service of original process upon a political subdivision shall be made by handing a copy to ... an agent duly authorized by the political subdivision to receive service of process."

**7.** The City also objected to a paragraph of Appellant's complaint as an overly broad assertion of negligence. The trial court sustained this preliminary objection. Appellant conceded this point in his reply to preliminary objections and does not contest it on appeal.

In January 2003, the trial court overruled the City's preliminary objections.  On January 27, 2003, the City requested that the trial court reconsider its order or amend the order to include a statement recommending that the Commonwealth Court grant an immediate appeal of the otherwise interlocutory order.  Such amendment was proper, the City argued, because the order involved "a controlling question of law as to which there [was] substantial ground for difference of opinion and that an immediate appeal from the order [might] materially advance the ultimate termination of the matter."  42 Pa. C.S. § 702(b).  When the trial court failed to act within thirty days, the petition was deemed denied.  *See* Pa.R.A.P. 1311(b).[8]  The City petitioned the Commonwealth Court for review of the interlocutory issue pursuant to Pa.R.A.P. 1311(b) ("Interlocutory appeals by permission"), which the court granted in May 2003.  In response, in June 2003, the trial court filed a brief opinion, stating that Writ 1 was "presented to the City of Philadelphia by good faith effort." [9]

Before the Commonwealth Court, the City asserted that Appellant's failure to comply with the Rules of Civil Procedure relating to service failed to satisfy the good faith requirement of *Lamp.*  Consequently, the City argued for the dismissal of the case.[10]  The court recognized that the Rules of Civil

8.  Nevertheless, on March 5, 2003, the trial court entered an order formally denying the petition.

9.  In addition to stating that the delivery by certified mail constituted a good faith effort, the trial court also concomitantly concluded that the delivery by certified mail satisfied the requirements for service by hand delivery by a competent adult, pursuant to Pa.R.C.P. 400.1 and 402.  The holding that certified mail delivery satisfied the requirement of hand delivery was rejected by the Commonwealth Court.  This Court declined to address this issue and instead limited our review to the Commonwealth Court's second holding regarding whether the defective service by certified mail constituted a good faith effort to effectuate notice under *Lamp* and its progeny.

10.  The courts below and the parties discuss the good faith issue as one involving the tolling of the statute of limitations.  We note, however, that the question presented concerns whether the case should be dismissed pursuant to our rule in *Lamp* which precludes a plaintiff from taking advantage of the continued validity of the writ following reissuance under Rule 401(b) and thereby requires dismissal of the case

Procedure require that original process be "served within the Commonwealth within thirty days after the issuance of the writ or the filing of the complaint," but allow for repeated reissuance of the writ at "any time and any number of times" if process cannot be served within the thirty-day window. *See* Pa.R.C.P. 401.

The court noted, however, that the *Lamp* rule requires plaintiffs to make a good faith effort to effectuate notice upon the defendant in order to keep the action alive. The court rejected Appellant's reliance on *Leidich,* in which the Superior Court found that a plaintiff, who mailed notice, attempted in good faith to serve the defendant where the plaintiff mistakenly believed that the defendant's insurance company had consented to service by mail and where the parties exchanged documents in the period between the defective service by mail and the re-issuance and proper service of the writ. *Leidich,* 575 A.2d at 919–20. The Commonwealth Court distinguished the case *sub judice,* noting that unlike the plaintiff in *Leidich,* Appellant had not done "anything to keep the legal machinery in play between August 12, 2002 and November 8, 2002." *McCreesh,* 839 A.2d at 1212.

The Commonwealth Court also relied on its decision in *Teamann,* 811 A.2d at 62, which required compliance with the Rules of Civil Procedure to find good faith, and in *Williams v. SEPTA,* 137 Pa.Cmwlth. 163, 585 A.2d 583 (1991), which held

unless a plaintiff can begin anew within the original period of limitations. As aptly stated by Justice Newman:

Strictly speaking, however, th[e] ability to dismiss the action has not been based on the bar of the statute of limitation, but has been based on the failure to satisfy the *Lamp* rule. *Cf. [Zarlinsky v. Laudenslager,* 402 Pa. 290, 167 A.2d 317, 319 (1961)] ("The [statute of limitations] is without direct bearing on the issue here involved since the plaintiffs filed their praecipe for writ of summons ... within two years of the happening of the accident. The statutory period of limitation becomes important, however, by *analogy* and furnishes the basis for the rule promulgated by the decision of this court with respect to the period of time within which a plaintiff must act to protect the efficiency of a writ of summons issued but not served.").

*Witherspoon,* 768 A.2d at 1088 (Newman, J., dissenting, joined by Cappy, J.) (emphasis in original); *see also id.* at 1084 (Saylor, J. concurring, joined by Castille and Nigro, JJ.).

that service by mail did not satisfy the Rules of Civil Procedure or the *Lamp* good faith requirement. *McCreesh*, 839 A.2d at 1212. Placing the burden of proof on Appellant, the court concluded that Appellant's delivery of Writ 1 by certified mail to the City in August did not constitute a good faith effort to serve the defendant with process under the *Lamp* rule because Appellant's attempt at service did not comply with relevant rules relating to service of process in Philadelphia County. *McCreesh*, 839 A.2d at 1213. Accordingly, the court reversed the trial court and remanded with directions to dismiss the case.

Appellant appealed to this Court and we granted review limited to the *Lamp* issue. Appellant maintains that the Commonwealth Court erred in overturning the decision of the trial court. He asserts that the decision conflicts with *Lamp*, which was designed to prevent plaintiffs from abusing a loophole in the Rules of Civil Procedure by stalling litigation and providing no notice to defendants of impending claims. Appellant asserts that the trial court acted within its discretion in finding good faith, because Appellant did not act to stall the litigation but instead provided the City with a copy of Writ 1 prior to the expiration of both the statute of limitations and the thirty-day period for service provided by Rule 401. Thus, Appellant maintains, the City suffered no prejudice because it had actual notice that he had commenced litigation regarding the August 12, 2000 accident.[11]

Appellant draws support from various decisions of the Superior Court that have permitted cases to continue despite technically deficient service where the defendant has actual notice of the litigation and is not prejudiced by the lack of strict compliance with the Rules of Civil Procedure.[12] He

---

11. Appellant additionally notes that, upon receipt of Writ 1, the City could have sought an order to compel Appellant to file a complaint pursuant to Pa.R.C.P. 1037.

12. *See Leidich*, 575 A.2d 914 (affirming decision not to dismiss where defendant was not prejudiced by the improper service by mail and plaintiff did not engage in course of conduct to stall machinery of justice, but rather pursued discovery prior to providing proper service); *Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224 (1994) (conclud-

maintains that these cases strike the appropriate balance between protecting defendants from unfair surprise and prejudice and plaintiffs from the harsh sanction of dismissal for non-prejudicial procedural missteps. He further argues that this balance comports with the policy expressed in Pa.R.C.P. 126, which provides that the Rules of Civil Procedure "shall be liberally construed" and that courts "at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Thus, he argues that the Commonwealth Court erred in overturning the decision of the trial court where Appellant did not stall the legal machinery, and the City received actual notice of his litigation and was not prejudiced by the defective service.

Conversely, the City argues that this Court should follow the cases that equate good faith with a plaintiff's strict compliance with the Rules of Civil Procedure. The City excerpts sentences from the decisions in *Lamp* and *Farinacci*, which state that plaintiffs must comply with local practice. *Lamp*, 366 A.2d at 889 ("[A] plaintiff should comply with local practice...."); *Farinacci*, 511 A.2d at 759 ("Plaintiffs are required to comply with local practice to ensure, insofar as they are able, prompt service of process.") [13] The City also directs our attention to those Superior Court and Commonwealth Court cases that have required strict compliance with the rules of procedure in order to satisfy the good faith requirement of

ing that plaintiff failed to make a good faith effort by neglecting to provide any notice to defendant, but distinguishing *Leidich* and *Hoeke v. Mercy Hospital*, 254 Pa.Super. 520, 386 A.2d 71 (1978) (plurality opinion) where the plaintiff acted in good faith by supplying actual, albeit technically deficient, notice which did not prejudice the defendant's substantive rights and where plaintiff did not intend to stall machinery of justice); *Fulco v. Shaffer*, 455 Pa.Super. 30, 686 A.2d 1330 (1996) (distinguishing cases such as *Leidich*, *Hoeke*, and *Fulco* where defendants received actual, though defective, notice from other cases where the defendants do not receive notice, noting that the defendants in the former cases do not suffer unfair surprise regarding the litigation after the running of the statute of limitations).

**13.** We note, however, that the cited cases do not hold specifically that the failure to comply with the rules is tantamount to a lack of good faith.

*Farinacci.*[14] Moreover, the City attempts to distinguish those cases that permit deviation from the Rules of Civil Procedure, noting that, unlike the case at bar, the parties in *Leidich* were engaged in on-going discovery during the period between the faulty service and the eventual proper service. The City also notes that in *Leidich* the defendant arguably misled the plaintiff by engaging in settlement negotiations for several months without mentioning the issue of improper service until after the expiration of the statute of limitations, while in the instant case, the City did nothing to lead Appellant to believe that service would not be an issue in the case. The City asserts that a lack of prejudice to the defendant is irrelevant to the failure to comply with the relevant rules of procedure.

■ In deciding whether the Commonwealth Court erred or abused its discretion in overturning the trial court's denial of the City's preliminary objection, we must first determine whether to adopt the strict approach of cases such as the case *sub judice* and *Teamann,* which require rigid compliance with the Rules of Civil Procedure in order to satisfy the *Lamp* test, or the more flexible approach of the *Leidich* line of cases, which allows for the continued validity of the writ despite non-compliance with the rules so long as the defendant received actual notice and was not prejudiced.[15]

14. *See Schriver,* 638 A.2d at 226 ("At a minimum, the good faith effort required in [*Lamp*] mandates compliance with the Pennsylvania Rules of [Civil] Procedure, and importantly, local practice)" (quoting *Feher v. Altman,* 357 Pa.Super. 50, 515 A.2d 317, 319 (1986) and *Green v. Vinglas,* 431 Pa.Super. 58, 635 A.2d 1070, 1073 (1993)); *Teamann,* 811 A.2d 52 (same). As noted *supra* in note 12, however, the court in *Schriver,* specifically distinguished the *Leidich* line of cases where petitioners acted in good faith despite a failure to conform to the rules regarding service:

> Both *Leidich* and *Hoeke* indicate that when the plaintiff attempts to give notice to the defendant, and does so, albeit in a technically defective fashion, and the plaintiff has not engaged in conduct to forestall 'the machinery of justice[,'] our [courts] will find that the statute of limitations has been tolled and allow the action to proceed.
> *Schriver,* 638 A.2d at 227.

15. We note that the question of whether strict compliance with the rules of civil procedure is required to meet the good faith test is a pure question of law, over which our review is plenary. *See Bilt–Rite*

██ We initially consider the policy considerations that have informed the development of the law in this area. We have long recognized that the "purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Insurance Co. of N. Amer. v. Carnahan,* 446 Pa. 48, 284 A.2d 728, 729 (1971). To this end, our legislature has enacted statutes of limitations that require actions to be "commenced" within certain time-frames depending on the nature of the underlying claims. *See* 42 Pa.C.S. §§ 5522–30. A matter "is commenced" when a "document embodying the matter" is filed in the appropriate office. *See id.* § 5503. Moreover, the Rules of Civil Procedure promulgated by this Court pursuant to Article V, Section 10(c) of the Pennsylvania Constitution provide that "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." *See* Pa.R.C.P. 1007.

It is self-evident that once the action has been commenced, the defendant must be provided notice of the action in order for the purpose of the statutes of limitation to be fulfilled. Therefore, this Court has set forth rules governing service of original process to ensure such notice. *See* Pa.R.C.P. 400–430. Rules 400 and 400.1 designate who may make service, and Rule 402 provides for the manner of service. As previously noted, the combination of Rule 400.1 and Rule 402 required Appellant in the instant matter to enlist the aid of either a sheriff or a competent adult to hand-deliver the original process to the City.

Rule 401 limits the time between filing and service. Specifically, subsection (a) requires service of original process within thirty days of the issuance of the writ. If a plaintiff fails to comply with subsection (a), the claim remains valid so long as the plaintiff complies with the procedures of subsection (b), which allows for reissuance of the writ at "any time and any number of times." Pa.R.C.P. 401(b). Thus, the plain lan-

*Contractors, Inc. v. The Architectural Studio,* 581 Pa. 454, 866 A.2d 270, 274 (2005).

guage of the rule allows a plaintiff to commence an action, thereby satisfying the statute of limitations, and yet to delay the provision of notice of the claim to the defendant interminably, thus undermining the purpose of the statute of limitations. *See Lamp*, 366 A.2d at 888–89.

We first limited a plaintiff's potential abuse of this rule in *Zarlinsky v. Laudenslager*, 402 Pa. 290, 167 A.2d 317 (1961), by instituting the "equivalent period doctrine:" [16]

> [Rule 1010(b) (repealed) ] is inadequately worded and its language must be construed by reasonable interpretation. The same limitation is to be applied to the time in which a writ of summons may be *reissued* as was formerly applied for *the issuance* of an alias or pluries writ, i.e., a writ of summons may be reissued only for a period of time which, measured from the date of original issuance of the writ, or the date of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for the bringing of the action.

*Id.* at 320 (emphasis in original). We attempted to rectify this anomaly further through our holding in *Lamp*, where we acknowledged "too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a praecipe for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service." *Lamp*, 366 A.2d at 888. Pursuant to our supervisory power over Pennsylvania courts, we qualified the rule, holding prospectively that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." In so construing the rule, we sought to "avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Id.* at 889.

16. In *Zarlinsky,* this Court reviewed former Rule 1010(b), which provided that a writ may be reissued "at any time and any number of times." The present Rule 401(b) includes the identical language.

We subtly altered our holding in *Lamp* in *Farinacci*, requiring plaintiffs to demonstrate "a good-faith effort to effectuate notice of commencement of the action." [17] In announcing this refinement to the *Lamp* rule, we acknowledged that the good faith requirement is "not apparent from a reading of the rule itself," but rather, satisfied the stated purpose of our decision in *Lamp* which was to avoid the situation where a plaintiff can retain exclusive control over litigation by not making a good faith effort to notify the defendant. *Farinacci*, 511 A.2d at 759. We held that determining whether a plaintiff acted in good faith lies within the sound discretion of the trial court. Therefore, noting that "plaintiffs are required to comply with local practice to ensure, insofar as they are able, prompt service of process," we affirmed the trial court's decision to dismiss the complaint where the plaintiff failed to deliver the writ to the sheriff as required by local practice and consequently delayed service upon the defendant for over a month. *Id.*

This Court's most recent decision on the issue is the plurality decision in *Witherspoon v. City of Philadelphia*, 564 Pa. 388, 768 A.2d 1079 (2001). Five justices affirmed the dismissal of a complaint finding that the plaintiff did not act in good faith where he made only one unsuccessful attempt to serve the defendant in nine months. *Id.* (Zappala, J., Opinion

17. In *Farinacci*, the majority affirmed the trial court's finding that the plaintiff violated *Lamp* when plaintiff's counsel misplaced the file and later forgot to take the necessary steps to effectuate timely service. Three justices dissented, focusing on *Lamp's* "intention to permit a party to demonstrate that his actions have not unreasonably stalled the legal proceedings he initiated." *Farinacci*, 511 A.2d at 760 (Zapalla, J., dissenting, joined by Larsen and McDermott, JJ.). The dissent argued that *Lamp* required a plaintiff to act reasonably. The dissent concluded that the plaintiff had not intended to stall the legal processes, and that defendant was not prejudiced by the delay in proper service because the defendant had been aware of plaintiff's claim for over a year prior to the commencement of legal proceedings. While the majority did not respond to the dissent's argument, we note that while the defendant in *Farinacci* had notice of the potential for litigation, it did not have actual notice of the commencement of litigation within the statute of limitations period. This contrasts with the cases such as *Leidich* and the instant case where the defendants had actual notice of the commencement of litigation, albeit via technically deficient service.

Announcing the Judgment of the Court, joined by Flaherty, C.J.); *id.* at 1084 (Saylor, J., concurring, joined by Castille and Nigro, J.J.).

While a majority of the court agreed that the plaintiff in that case failed to demonstrate good faith, the justices failed to agree on an appropriate test. Justice Zappala, joined by then Chief Justice Flaherty, opined that the general intent of the rules of civil procedure allowing for reissuance of writs was to

allow a plaintiff to commence an action by filing a praecipe even at the very last moment before the limitation period expires and not be penalized because the 'official' follow-up activity (issuance of the writ by the prothonotary, service of the writ by the sheriff) is not also completed within the limitation period.

*Id.* at 1083. They contended, however, that *Lamp* and *Farinacci* restricted the scope of the rules and concluded "that any failure regarding follow-up activity that is attributable to plaintiff or his agents, rather than public officials falls outside this purpose." *Id.* Accordingly, they would have limited Rule 401 further: "[w]e deem it necessary that where the progression 'straddles the line' of the limitations period the process must be served within the time allowed by the Rules of Civil Procedure or if service cannot be made, the process must be immediately and continually reissued until service is made." *Id.* at 1084.

The three concurring justices found the rule proposed by Justice Zappala "unduly restrictive." *Id.* at 1084 (Saylor, J., concurring). Moreover, they noted that the failure to prosecute claims diligently would be better regulated by the promulgation of rules of civil procedure rather than by "modifying the tolling effect of the commencement of the action in relation to the applicable limitations periods," noting that statutes of limitations are generally tied to the commencement of an action rather than the service of process.[18] *Id.* Justice

---

**18.** Justice Saylor noted that the Federal Rules of Procedure provide for such regulation, specifically citing Federal Rule of Civil Procedure 4(m):

Newman, in a dissent joined by now Chief Justice Cappy, similarly rejected Justice Zapalla's suggested rule which would abolish the "equivalent period doctrine" and instead require process to be "immediately and continually reissued." *Id.* at 1085. Justice Newman opined, "This elimination of the 'equivalent period' doctrine ignores the statutory definition of when an action commences, provides insufficient guidance for courts and practitioners in determining whether the 'good faith' standard has been satisfied, and disregards the other protections available to defendants where a plaintiff has been dilatory in effecting service." *Id.* at 1085.[19]

In applying *Lamp* and its progeny, the Commonwealth and Superior Courts have formulated inconsistent rules, sometimes dismissing cases due to plaintiffs' failure to comply strictly with the Rules of Civil Procedure and on other occasions reserving the drastic measure of dismissal for only those cases where the defendant has been prejudiced by plaintiff's failure to comply with the rules. *Compare Teamann,* 811 A.2d 52 (Pa.Cmwlth.2002) (equating "good faith" with strict compliance with the Rules of Civil Procedure); *Green,* 635 A.2d 1070, 1073 (Pa.Super.1993) (same); *Williams,* 585 A.2d 583 (Pa.Cmwlth.1991) (same); *Feher,* 515 A.2d 317, 319 (Pa.Super.1986) (same); *with Fulco,* 686 A.2d 1330 (refusing to dismiss claims based on failure to comply with rules where defendant received actual notice and was not prejudiced); *Leidich,* 575 A.2d 914 (Pa.Super.1990) (same); *Hoeke,* 386 A.2d 71 (Pa.Super.1978) (same); *Big Beaver Falls Area Sch. Dist. v. Big Beaver Falls Area Educ. Assoc.,* 89 Pa.Cmwlth.

Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

**19.** Justice Newman recommended a remand for a hearing regarding whether the plaintiff's efforts in *Witherspoon* satisfied the good faith requirement of *Lamp*.

176, 492 A.2d 87 (1985) (same); *but see Schriver*, 638 A.2d at 226 (holding that *Lamp* requires compliance but allowing exceptions as in *Leidich* ).

Upon review of these cases, we conclude that the rigid compliance requirement of the *Teamann* line of cases is incompatible with the plain language of Rule 401, the spirit of *Lamp*, and the admonition of Rule 126 to construe liberally the rules of procedure so long as the deviation does not affect the substantial rights of the parties. In *Lamp*, we sought to alleviate the hardships caused by plaintiffs who exploited the rules of civil procedure to make an end run around the statutes of limitations.

Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice. Therefore, we embrace the logic of the *Leidich* line of cases, which, applying *Lamp*, would dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant.[20]

In setting forth this rule, we are merely re-animating the purpose of *Lamp* and reigning in the line of cases which have strayed from it. As stated earlier, this Court in *Lamp* attempted to prevent plaintiffs from abusing the liberal rules of civil procedure which had been enacted originally to protect plaintiffs from being thrown out of court despite commencing an action within the applicable limitations period. The cases requiring strict compliance hearken back to these draconian procedures and replace a factual good faith inquiry with an objective bright line standard of compliance that is wholly inconsistent with the concept of good faith.

Turning to the disposition of the case at bar, we note that Commonwealth Court reversed the trial court's finding of a

**20.** Additionally, we note that there may be situations where actual notice may not be absolutely necessary so long as prejudice did not result, but we need not delineate such an exception here because the issue is not before us.

good faith effort based on Appellant's failure to comply with the Rules of Civil Procedure in serving Writ 1. We now reverse the Commonwealth Court because Appellant supplied the City with actual notice. As the trial court did not speak to the issue of prejudice, we direct the Commonwealth Court to remand the case to the trial court to determine whether the City suffered prejudice as a result of the delay of proper service between August 2002 and November 2002. Jurisdiction relinquished.

Chief Justice CAPPY and Justices CASTILLE and SAYLOR join the opinion.

Justice NEWMAN files a dissenting opinion.

Justice EAKIN files a dissenting opinion in which Justice NIGRO joins.

Justice NEWMAN, dissenting.

I agree with the position that Mr. Justice Eakin articulates in his Dissenting Opinion that the failure of Appellant to comply with the rule regarding service of original process precludes a finding that he acted in good faith sufficient to toll the statute of limitations.

The Majority notes that the most recent holding of this Court with respect to the issue *sub judice* is the plurality decision in *Witherspoon v. City of Philadelphia,* 564 Pa. 388, 768 A.2d 1079 (2001). (Majority Opinion at 223–25, 888 A.2d at 672). The Majority states that in *Witherspoon* "[f]ive justices affirmed the dismissal of a complaint finding that the plaintiff did not act in good faith where he made only one unsuccessful attempt to serve the defendant in nine months." *Id.* I dissented in *Witherspoon* and write separately now only to elucidate my position in *Witherspoon* as it relates to my consideration of the instant case.

In *Witherspoon,* I stated that:

a correct reading of *Lamp* requires only that a plaintiff attempt in good faith to serve the *particular* process issued within the limitations period and that, so long as the plain-

tiff acted in good faith by complying with the rules for service of process, he or she should benefit from the "equivalent period".... [1]

*Id.* at 1087 (Newman, J., dissenting) (emphasis in original). I objected to the fact that the Opinion Announcing the Judgment of the Court in *Witherspoon* abolished the equivalent period doctrine, and, by doing so, required a plaintiff to make continuous efforts to serve a defendant beyond the one attempt in order to keep the matter alive. *Id.* Also, I noted that the plaintiff in *Witherspoon* may well have established good faith based on my view that his use of a private process server, rather than the Sheriff's Department, was permitted by the Rules of Civil Procedure for service within the City of Philadelphia. However, my view differed from the Opinion Announcing the Judgment of the Court, which determined that the writ was not served within the time period required by the rules. *Id.* at 1083.

I dissented in *Witherspoon* because I opposed the abolition of the equivalent period doctrine and because I believed it possible that the plaintiff in that matter may have established good faith by complying with the rules of service. However, I reiterated that *Lamp* requires only that a plaintiff "acted in good faith by complying with the rules for service of process...." *Id.* at 1087. Compliance with the rules of service was of paramount importance to me in my analysis in *Witherspoon.*

In the case before us, I have no such reservations about the method of service effectuated by Appellant because it clearly did not comport with the rules for service of process in Philadelphia. As a result, Appellant's failure to comply with the appropriate rule warrants the conclusion that he did not act in good faith and that the statute of limitations with respect to his action was not tolled. For that reason, I would affirm the Order of the Commonwealth Court.

1. The issue of the "equivalent period" was the focus of the decision of this Court in *Witherspoon* and is not involved in the instant matter.

Justice EAKIN, dissenting.

The majority has developed a new rule holding a trial court may only dismiss a case where there is ineffective service in two distinct situations: (1) where the plaintiff's actions evidence an intent to stall the judicial machinery, or (2) where the plaintiff's failure to comply with the Rules of Civil Procedure has actually prejudiced the defendant. Majority Op., at 226–28, 888 A.2d at 674. The majority goes so far as to suggest that without prejudice, actual notice itself, much less proper service, may be unnecessary. As this result fundamentally fails to comport with the Pennsylvania Rules of Civil Procedure and controlling case law, I offer my dissent.

The Pennsylvania Rules of Civil Procedure expressly provide the sheriff or a competent adult shall serve original process in Philadelphia. Pa.R.C.P. 400.1(a). This Rule was adopted in 1990 by this Court, as the sole means of making service there. It is the only means of proper service under this Rule, a directive sufficiently clear and simple. Nevertheless, proper service was not made here until November, nearly three months after the statute of limitations expired. Plaintiff did not comply with this basic, straight-forward, and fundamentally important Rule of service, and is to be excused in the name of "flexibility."

Notice of an action is not the same as service of process; these are distinct and important notions, and our Rule refers only to the latter, and rightfully so. There are good reasons for requiring strictly proper service, and today's rule abandons them in favor of an amorphous concept of "no harm, no foul." This has its place in basketball, but not in service of legal process.

I also disagree with the majority's application of *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976), as interpreted in *Farinacci v. Beaver County Industrial Development Authority,* 510 Pa. 589, 511 A.2d 757 (1986). In *Lamp,* the plaintiff's attorney filed a praecipe for a writ of summons within the applicable statute of limitations period, but instructed the prothonotary to refrain from delivering the writ to the sheriff

for service. After the statute of limitations expired, the plaintiff's attorney had the writ reissued and served. The Rules at the time allowed such abuses, and this Court commented it had become a "relatively common practice" for lawyers to file a praecipe, then deliberately forgo timely service, opting instead to have the writ reissued and served after the statute of limitations expired. *Lamp*, at 886. We therefore established constraints on permissible conduct to "avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Id.*, at 889. To that end, this Court held:

> [I]n actions initiated subsequent to the date of this decision, a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion. . . .

*Id.*[1] We further emphasized in order to prohibit manipulation of the Rules of service, a "plaintiff should comply with local practice as to the delivery of the writ to the sheriff for service." *Id.* Thus, we explained that "[i]f under local practice it is the prothonotary who both prepares the writ and delivers it to the sheriff, the plaintiff shall have done *all that is required of him when he files the praecipe for the writ.*" *Id.* (emphasis added). On the other hand, we indicated that if local practice dictates a plaintiff must deliver the writ to the sheriff for service, the plaintiff shall do so promptly. *Id.*

In *Farinacci*, this Court revisited *Lamp* and expanded on this good faith requirement. *See Farinacci*, at 759 ("*Lamp* requires of plaintiffs a good-faith effort to effectuate notice of commencement of the action."). In *Farinacci*, the plaintiffs filed a praecipe for a writ of summons February 2, 1982, one day before the statute of limitations expired. The prothonotary issued the writ the next day, and although counsel intended

---

1. The Court sought a compromise between absolute adherence to the 30-day service requirement and the once common practice of allowing attorneys to delay or prevent service of the writ.

to serve the writ immediately, he misplaced the file. When counsel found the file a week later, he "forgot to take the necessary steps to effectuate service of the writ." *Id.* at 758. On March 11, 1982, counsel had the writ reissued and served it within two weeks. The defendants filed preliminary objections, arguing the filing of the praecipe had "not toll[ed] the statute of limitations where plaintiffs failed to instruct and pay the sheriff for service in accordance with local practice." *Id.* The trial court agreed and dismissed the action; the Superior Court affirmed.

This Court also affirmed, concluding the trial court had not abused its discretion in finding the plaintiffs failed to satisfy *Lamp's* requirement of a good-faith effort to effectuate service. Under *Lamp*, "plaintiffs must comply with local practice to ensure, insofar as they are able, prompt service of process," [2] and according to the trial court, the plaintiffs had not met this requirement, as local practice demanded they provide the sheriff with instructions and payment for service, and the plaintiffs' counsel neglected to do so for approximately one month. *Id.* This Court emphasized it was within the trial court's "sound discretion" to determine whether a good-faith effort to effectuate service was made. *Id.* As the evidence demonstrated not only that the "first eight or nine days of delay [was] attributable to counsel's simply misplacing the file," but also the "remaining four weeks' delay was attributable only to counsel's faulty memory." *Id.*, at 759–60, the Court concluded:

> [A]s plaintiffs have failed to provide an explanation for counsel's inadvertence which could substantiate a finding that plaintiffs made a good-faith effort to effectuate service

2. *Accord Nagy v. Upper Yoder Township*, 652 A.2d 428, 430 (Pa.Cmwlth. 1994) (holding simple neglect or mistake could support finding of failure to comply with *Lamp's* good faith requirement); *Williams v. Southeastern Pennsylvania Transportation Authority*, 137 Pa.Cmwlth. 163, 585 A.2d 583, 585 (1991) ("*Lamp* requires a plaintiff to comply with local practice regarding delivery of the writ to the sheriff for service."); *Feher by Feher v. Altman*, 357 Pa.Super. 50, 515 A.2d 317, 319 (1986) ("At a minimum, the good-faith requirement in [*Lamp*] mandates compliance with the Pennsylvania Rules of Civil Procedure, and, importantly, local practice.").

of the writ, we are constrained to hold that the order of the [trial court] granting defendants' preliminary objections and dismissing plaintiffs' action was not an abuse of discretion, and was therefore proper.

*Id.,* at 760.

*Lamp* and *Farinacci,* decisions from this Court, control this case. The holding of the intermediate appellate court in *Leidich v. Franklin,* 394 Pa.Super. 302, 575 A.2d 914 (1990) does not, nor does it express a better rule. *Farinacci* clarified that, in order to satisfy *Lamp's* good faith standard, a plaintiff must comply with local Rules of service. Considering both *Lamp* and *Farinacci,* along with the evidence of record in this case, I would conclude the Commonwealth Court did not err in determining McCreesh, like the plaintiffs in *Farinacci,* did not engage in a good-faith effort to effectuate service in accordance with the Rules of Civil Procedure, and, as a result, McCreesh's filing of the praecipe did not toll the statute of limitations.

Indeed, like the plaintiffs in *Farinacci,* McCreesh did not promptly comply with local practice and Rules of service. Instead of following the clear mandate of our Rule, McCreesh sent the writ to the City Law Department by certified mail, which is not a valid method of service. Pa.R.C.P. 400.1(a). This Court found it significant in *Farinacci* that the plaintiffs waited approximately five weeks to undertake proper service, yet McCreesh delayed service even longer, waiting three months before getting the writ reissued and serving the City properly. And while *Farinacci* states an explanation, beyond thoughtlessness, for counsel's failure to comply with the Rules could "substantiate a finding that plaintiffs made a good-faith effort to effectuate service of the writ," *Farinacci,* at 760, here, no such explanation has been provided. In fact, McCreesh has never offered any explanation for the failure to serve the City in accordance with our Rules.[3] *See, e.g.,*

---

**3.** Both *Lamp* and *Farinacci* make clear that a court should not find a plaintiff acted without good faith if fault for improper service lies with someone other than the plaintiff or his agents, *e.g.,* if the sheriff does

*Williams,* at 585 (although plaintiff may not have actively attempted to thwart service, there was no good-faith effort because "neither did he take affirmative action to insure that the writ was served in accordance with the Rules of Civil Procedure.").

The Commonwealth Court also noted the trial court's finding (that McCreesh made a good-faith effort to serve the writ) was based on its mistaken conclusion that McCreesh properly served the writ by certified mail; in fact, such service was not proper. Accordingly, the Commonwealth Court considered whether other factors supported a finding of good faith and, if so, whether this would support the ruling that filing the writ tolled the statute of limitations. The Court concluded McCreesh's actions, or rather his inaction, did not constitute a good-faith effort to promptly serve the City, as *Lamp* and its progeny require. This case is essentially indistinguishable from *Farinacci;* consequently, the Commonwealth Court did not err in finding McCreesh did not act with the good faith required by our case law.

The majority states:

> We conclude that the rigid compliance requirement of the *Teamann* line of cases is incompatible with the plain language of Rule 401, the spirit of *Lamp,* and the admonition of Rule 126 to construe liberally the rules of procedure so long as the deviation does not affect the substantial rights of the parties.

not follow through with service after the plaintiff has done all that is necessary.

> If under local practice it is the prothonotary who both prepares the writ and delivers it to the sheriff, the plaintiff shall have done all that is required of him when he files the praecipe for the writ; the commencement of the action shall not be affected by the failure of the writ to reach the sheriff's office where the plaintiff is not responsible for that failure.

*Lamp,* at 889; *See Farinacci,* at 759–60 (delay attributable only to plaintiff or his agents does not support finding of good faith). However, McCreesh and his counsel did *not* do all required of them to secure proper service of the writ when they merely put the writ in the mail to a city office; thus, this caveat is of no assistance to McCreesh.

Majority Op., at 226–28, 888 A.2d at 674. I see no "plain language" in Rule 401 that trumps *Lamp* or *Farinacci.* Indeed, the plainest language relevant to cases filed in the First Judicial District is not Rule 401; it is Rule 400.1. The "spirit" of *Lamp* is that of making proper service so as to keep the case moving; the spirit of *Lamp* is expressly defeated by ignoring the Rule of service and sitting by for months. And Rule 126 does not say the Rules are to be merely construed liberally—it says they are to be liberally construed in order "to secure the just, speedy and inexpensive" determination of the action. Pa.R.C.P. 126. A "just, *speedy* and inexpensive" determination is advanced by adherence to the Rule, not by notions of flexibility which excuse compliance with basic Rules of service promulgated by the Supreme Court. This is not "liberal construction"; it is liberal ignoring of the Rule to allow a result. A "just, speedy and inexpensive" result follows adherence to the clear, uncomplicated Rule of service.

The majority relies on *Leidich v. Franklin*, 394 Pa.Super. 302, 575 A.2d 914 (1990), for the proposition that actual notice suffices to establish good faith under *Lamp.* Even if *Leidich* could supersede case law from this Court, it does not actually stand for such a broad proposition, and is factually distinguishable from the instant case. In *Leidich*, the plaintiff sent original process to the defendants by first class mail, which is not permitted under Pa.R.C.P. 400; service was not properly made until after the expiration of the statute of limitations. Shortly afterward, however, the plaintiff (1) began communicating with and submitting documents to the defendants' liability carrier, (2) served deposition notices for the depositions of the defendants, and (3) began settlement discussions with the defendants' carrier. *See Leidich*, at 919–20. Because these proceedings were well underway prior to the expiration of the statute of limitations, the Superior Court stated: "consistent with *Lamp's* teachings, [we] cannot in good conscience equate the plaintiff's attorney's actions with a 'course of conduct which serve[d] to stall' the machinery of justice." *Id.*, at 919 (quoting *Lamp*, at 889). The court therefore held *Lamp's* good faith requirement was satisfied. *Id.*, at

920 ("[U]nder the particular facts here, *Lamp's* 'good-faith' effort to notify the defendants was established in tandem with the absence of a 'course of conduct' attributable to the plaintiff evidencing a stalling of the machinery of justice."). However, the court limited its holding to a situation where, as here, "the defect in service ha[d] not affected any substantial rights of the defendants," and there was no "allegation that the defendants were prejudiced by the manner in which they received notice of the lawsuit." *Id.,* at 919–20.

Leidich was serving papers and in settlement discussions before the statute of limitations ran. McCreesh did not initiate any actions to advance his lawsuit until three months after the statute of limitations expired. Thus, I must disagree with the majority's statement that *Leidich* supports the proposition that actual notice alone is sufficient to constitute good faith; *Leidich* only suggests a court may consider actual notice along with other factors in ascertaining whether a plaintiff has acted in good faith. While *Leidich* indicates actual notice and prejudice to a defendant can play a part in a good faith analysis under *Lamp,*[4] we need not write a new rule to accomplish this.

Under *Farinacci,* we should be constrained to find it was not reversible error for the Commonwealth Court to conclude the mere filing of the praecipe before the expiration of the statute of limitations did not toll the statute, because the plaintiff did not "comply with local practice to ensure, insofar as [he was] able, prompt service of process." *Farinacci,* at 759. Furthermore, McCreesh provides no explanation—aside from unfamiliarity with the Rules of Civil Procedure—that

---

**4.** In support of this premise, *Leidich* and *Fulco v. Shaffer,* 455 Pa.Super. 30, 686 A.2d 1330 (1996), rely on the dissenting opinion in *Farinacci,* which specifically criticized the majority for failing to consider actual notice and prejudice. *See Leidich,* at 918, 919 (citing former Justice Zappala's dissent in *Farinacci* ); *Fulco,* 686 A.2d at 1333; *see also Farinacci,* at 760 (Zappala, J., dissenting) (majority should not have affirmed trial court's decision when record revealed defendants "were made aware of the [plaintiff's] claim within one year prior to the commencement of . . . legal proceedings," and trial court's good faith analysis was "noticeably void of any finding of prejudice suffered by any of the [defendants]"). A dissenting opinion from this Court is not binding legal authority.

would substantiate a finding that he did, in fact, make a good-faith effort to effectuate service. *See Fulco,* 686 A.2d at 1333 n. 5 (*"Farinacci* effectively requires that mere unexplained neglect prevents the finding of a good-faith effort."). His inaction long after the statute ran is conclusive support for the Commonwealth Court's conclusion.

I would hold the Commonwealth Court did not err in finding McCreesh failed to act in good faith as required by *Lamp* and *Farinacci. Lamp* does not excuse inertia simply because there is no intent to stall the process—it requires the moving party to move, and failure to do so properly and promptly has consequences even for the unintentionally inert. *Lamp* looks to the moving party's actions, and does not excuse inaction simply because there is no affirmative showing of prejudice to the non-moving party. Thus, I would affirm the decision that the statute of limitations barred McCreesh's claim.

Justice NIGRO joins this dissenting opinion.